**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MANOJ PATRICK JOHN BOSCO RAYAN**,<br><br>Plaintiff,<br><br>v.<br><br>**MARKWAYNE MULLIN**, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-00824 (TNM) |

# MEMORANDUM OPINION

Manoj Patrick John Bosco Rayan applied for a visa and permanent residence under the EB-5 program for immigrant investors. After receiving no response for more than 17 months, he sued several senior officials under the Administrative Procedure Act and the Mandamus Act. But his claims of unreasonable delay suffer a fatal flaw: The Court lacks subject matter jurisdiction over them. Because the Immigration and Nationality Act strips the Court's jurisdiction over Rayan's case, the Court will dismiss it.

## I.

The EB-5 program "permits noncitizens to apply for permanent residence in the United States by investing in approved commercial enterprises that are based on proposals for promoting economic growth." *Liu v. SEC*, 591 U.S. 71, 77 (2020) (cleaned up). To qualify for an EB-5 visa, an immigrant must "creat[e] full-time employment for not fewer than 10 United States citizens, United States nationals, or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States." 8 U.S.C. § 1153(b)(5)(A)(ii). To that end, the immigrant must invest at least $1,050,000 generally or

$800,000 "in a targeted employment area or in an infrastructure project." *Id.* § 1153(b)(5)(C)(i)–(ii).

Obtaining permanent residence through the EB-5 program involves multiple steps. As relevant here, the immigrant must first submit a Form I-526E petition for classification as an EB-5 investor to U.S. Citizenship and Immigration Services ("USCIS"). *See* 8 C.F.R. § 204.6(a). Upon that petition's approval, an immigrant already located in the United States may apply for two-year conditional lawful permanent residence via Form I-485. *See* 8 U.S.C. § 1186b(a)(1), (b)(1); 8 C.F.R. § 216.1. After that two-year period ends, the immigrant may finally file a Form I-829, the approval of which confers unconditional permanent residence. *See* 8 U.S.C. § 1186b(c)(3)(B)(i)(II); 8 C.F.R. § 216.6(d)(1).

Rayan "is a national of India" who "seeks an EB-5 visa based on [his] qualifying investment under the EB-5 program." Pet., ECF No. 1, ¶ 10. His investment of more than $800,000 aims to "finance the development and operation of a portfolio of affiliated housing projects located throughout the San Francisco and East Bay area." *Id.* ¶ 21. In late September 2024, he submitted an I-526E petition and I-485 application "along with substantial documentation" about his investment. *Id.* ¶ 22.

Rayan waited more than 17 months without receiving a response on his petition or application. *Id.* ¶ 29. So he launched suit here against the Secretary of Homeland Security, the Director of USCIS, and the Chief of USCIS's Immigrant Investor Program Office (collectively, "the Government"). *Id.* ¶¶ 11–13. He brings claims under the Administrative Procedure Act and Mandamus Act, both of which seek to compel the Government to promptly adjudicate his petition and application. *See id.* ¶¶ 148–89.

The Government moves to dismiss Rayan's suit under Rule 12(b)(1). Mot. Dismiss, ECF No. 10, at 7. According to the Government, the Immigration and Nationality Act ("INA") strips the Court's jurisdiction over Rayan's claims about both his I-526E petition and I-485 application. *Id.* at 16–18. Rayan opposes dismissal and cross-moves for summary judgment. *See* Opp'n & Cross-Mot. Summ. J., ECF No. 11, at 1. The parties' motions are ripe for this Court's decision.

**II.**

"Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To survive a motion to dismiss under Rule 12(b)(1), "[t]he plaintiff bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). In evaluating its own jurisdiction, the Court "may consider materials outside the pleadings" but must "accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (cleaned up). Although the Court presumes that agency action is reviewable, that presumption is "overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (cleaned up). If the Court determines that it lacks jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(h)(3).

For cases within the Court's jurisdiction, "[s]ummary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review." *AID Atlanta, Inc. v. HHS*, 340 F. Supp. 3d 1, 4 (D.D.C. 2018) (cleaned up). To win summary judgment, a movant must establish that "there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**III.**

Rayan's suit travels under the APA and Mandamus Act. The APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Mandamus Act, meanwhile, grants federal district courts original jurisdiction over actions "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[T]he standards for obtaining relief are essentially the same" under both statutes. *See Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010); *accord In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). Here, Rayan's claims fail at the threshold because the INA deprives the Court of subject matter jurisdiction.

Three INA provisions deliver that result. The first divests jurisdiction over large swaths of immigration decisions, including "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." 8 U.S.C. § 1252(a)(2)(B)(i). More relevant here, the provision also reaches "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." *Id.* § 1252(a)(2)(B)(ii). The sole carveout allows "review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *Id.* § 1252(a)(2)(D). With § 1252(a)(2)(B)(ii)'s "catchall," Congress "insulated from judicial review" any action "made discretionary by legislation" under Subchapter II of Chapter 12 of Title 8, 8 U.S.C. §§ 1151–1381. *See Kucana v. Holder*, 558 U.S. 233, 246–47 (2010) (footnote

omitted); *see also id.* at 253 (Alito, J., concurring) ("The phrase 'under this subchapter' refers to Subchapter II of Chapter 12 of Title 8, 8 U.S.C. §§ 1151–1381 . . . .").

The other two provisions deal with I-526E petitions and I-485 applications. One states that the Secretary of Homeland Security "may process [I-526E] petitions in a manner and order established by the Secretary." 8 U.S.C. § 1153(b)(5)(E)(ii)(II). The other declares:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

*Id.* § 1255(a).[1]

Taken together, these provisions offer "clear and convincing evidence of congressional intent to preclude judicial review" of Rayan's claims. *See Guerrero-Lasprilla*, 589 U.S. at 229 (cleaned up). "A statute affecting federal jurisdiction 'must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes.'" *Kucana*, 558 U.S. at 252 (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212 (1968)); *see also Lloyd v. Ingenuity Prep Pub. Charter Sch.*, 368 F. Supp. 3d 25, 27 (D.D.C. 2019) ("As in any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless

[1] While § 1255(a) refers only to adjustment of status "by the Attorney General," Congress has transferred the adjudication functions of the former Immigration and Naturalization Service to the Secretary of Homeland Security and his delegate in USCIS. *See* 6 U.S.C. § 271(b)(5); *see also id.* § 557 ("With respect to any function transferred by or under this chapter . . . , reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary [of Homeland Security], other official, or component of the Department [of Homeland Security] to which such function is so transferred.").

otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.”). Here, the text removes the Court’s jurisdiction over Rayan’s case.

Recall the INA’s catchall, which strips jurisdiction over “any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion.” 8 U.S.C. § 1252(a)(2)(B)(ii). That provision’s breadth stems from the word “any.” As the Supreme Court “has repeatedly explained, the word ‘any’ has an expansive meaning.” *Patel v. Garland*, 596 U.S. 328, 338 (2022) (cleaned up); *accord Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020) (collecting cases). The catchall thus sweeps broadly, embracing “any other decision or action” that the relevant INA subchapter makes discretionary.

That is where the other two provisions come into play. Remember the one governing I-526E petitions, which says that the Secretary of Homeland Security “may process petitions in a manner and order established by the Secretary.” 8 U.S.C. § 1153(b)(5)(E)(ii)(II). As the Supreme Court also has “repeatedly observed, the word ‘may’ *clearly* connotes discretion.” *Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) (cleaned up); *accord Biden v. Texas*, 597 U.S. 785, 802 (2022) (collecting cases). Here, the Secretary’s discretion extends to the “manner and order” in which to “process [I-526E] petitions,” 8 U.S.C. § 1153(b)(5)(E)(ii)(II), which goes to the core of Rayan’s unreasonable delay suit, *see* Pet. ¶¶ 153, 182. Meanwhile, the other provision not only states that the immigrant’s permanent residence status “may be adjusted by the Attorney General,” but it also spells out that he may do so “in his discretion and under such regulations as he may prescribe.” 8 U.S.C. § 1255(a). The grant of discretion is plain.

In short, three INA provisions work together to displace this Court’s jurisdiction over Rayan’s suit. The ordinary meaning of words like “any” and “may” counsels as much. And

indeed, it is in cases involving the same jurisdiction stripping provision that the Supreme Court most recently emphasized the breadth of "any" and the discretion baked into "may." In *Patel*, the Court held that § 1252(a)(2)(B)(i)—the catchall's neighbor—"precludes judicial review of factual findings that underlie" "the Attorney General's decisions denying discretionary relief from removal." 596 U.S. at 331. As the Court reasoned, the provision's text extended to "*any* judgment *regarding* the granting of relief under § 1255 and the other enumerated provisions." *Id.* at 338. And in *Bouarfa*, the Court interpreted § 1252(a)(2)(B)(ii) to hold that its catchall foreclosed jurisdiction over lawsuits challenging "the Secretary of Homeland Security's decision to revoke initial approval of a visa petition." 604 U.S. at 9. The relevant companion provision there stated that the Secretary "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any [visa] petition." 8 U.S.C. § 1155. In the *Bouarfa* Court's eyes, that language was "a quintessential grant of discretion." 604 U.S. at 13.

By the same token, several circuits have held "that § 1252(a)(2)(B)(ii) precludes jurisdiction over challenges to USCIS delays in adjudicating Form I-485 adjustment of status applications." *See Kanapuram v. Dir., USCIS*, 131 F.4th 1302, 1306–07 (11th Cir. 2025) (collecting cases); *see also Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024) ("Section 1255(a) expressly leaves not only the ultimate *decision* to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*—including the pace at which that process is undertaken—to the discretion of the Attorney General . . . ."); *Geda v. Dir. USCIS*, 126 F.4th 835, 843 (3d Cir. 2025) ("Section 1255(a) is a classic grant of discretion because it provides the Secretary discretion over not only the final decision but the entire process for reaching that decision."); *Thigulla v. Jaddou*, 94 F.4th 770, 775 (8th Cir. 2024) (same); *Kale v. Alfonso-Royals*, 139 F.4th 329, 331 (4th Cir. 2025) (same).

Meanwhile, two circuits have rejected similar unreasonable delay claims on the merits without ruling on the jurisdiction stripping issue. *See Gupta v. Jaddou*, 118 F.4th 475, 482 (1st Cir. 2024) ("[W]e may assume there are no statutory bars to the exercise of jurisdiction and proceed directly to the merits, because, for the reasons we will next explain, we resolve the merits in the defendants' favor."); *see also Babaria v. Blinken*, 87 F.4th 963, 976–80 (9th Cir. 2023) (affirming district court's denial of preliminary injunction without addressing jurisdiction stripping). This Court reads little into these circuits' decisions to rebuff the unreasonable delay claims on the merits rather than jurisdictional grounds. *See Royal Canin USA, Inc. v. Wullschleger*, 604 U.S. 22, 42 (2025) ("This Court has often stated that drive-by jurisdictional rulings—asserting or denying jurisdiction without elaboration, or analysis of whether anything turned on the ruling—should be accorded no precedential effect." (cleaned up)).

But even in sidestepping jurisdiction, those circuits nonetheless recognized § 1255(a)'s discretionary nature when addressing the merits. *See Gupta*, 118 F.4th at 483 ("Thus, by its plain terms, § 1255(a) neither requires the Secretary of DHS to adjust the status of a noncitizen nor purports to address how the Secretary must adjudicate an application for adjustment that is filed. Rather, the text of § 1255(a) provides only that the Secretary may adjust a noncitizen's status as a matter of discretion under such regulations as the Secretary may prescribe if the noncitizen has applied for adjustment and meets certain criteria for applying."); *Babaria*, 87 F.4th at 977 (reasoning that § 1255(a) "vests the government with considerable leeway in establishing the process" for adjusting permanent residence status). Although the D.C. Circuit has yet to weigh in, its sister circuits speak loudly against jurisdiction.

All told, this Court holds that it lacks jurisdiction over Rayan's suit. That result flows from "the text and context" of § 1252(a)(2)(B)(ii)—"which is, after all, a jurisdiction-stripping

statute"—coupled with the two INA provisions that grant the Government discretion in processing I-526E petitions and I-485 applications. *See Patel*, 596 U.S. at 347. "The plain meaning of th[ose] provision[s], not any interpretative presumption, drives [the Court's] conclusion today." *See id.*

In his effort to resist that conclusion, Rayan musters little textual support. He points to the EB-5 Reform and Integrity Act of 2022, which directs USCIS to "complete a study of fees charged in the administration of the [EB-5] program." Pub. L. No. 117-103, § 106(b), 136 Stat. 49, 1103–04 (Mar. 15, 2022). The Act also instructs USCIS to set fees "at a level sufficient to," among other things, "attain[] the goal of completing adjudications, on average, not later than" 240 days after receiving an I-526E petition. *Id.* at 1104. In Rayan's view, this "specific processing time goal[]" is a "mandate" that overrides the Government's discretion. Opp'n & Cross-Mot. Summ. J. at 2.

Not so. The congressional directive is about fees, and its processing "goal" speaks only to averages, not any particular adjudication. This is not enough to overcome the INA's clear grants of discretion, let alone to impose an enforceable deadline for adjudicating Rayan's I-526E petition or I-485 application. The D.C. Circuit reasoned instructively in *Da Costa v. Immigration Investor Program Office*, 80 F.4th 330 (D.C. Cir. 2023). The plaintiffs there cited a predecessor "bill amending the INA," which "expressed 'the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application.'" *Id.* at 344 (quoting Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, Title II, § 202, 114 Stat. 1262, 1262 (Oct. 17, 2000) (codified at 8 U.S.C. § 1571(b))). As the Circuit saw it, that "language [wa]s insufficient to set a deadline." *Id.* So too here.

Finally, Rayan insists that the Government's "failure to act is not a discretionary 'decision or action' within the meaning of the statute, and [the Government] therefore cannot rely on § 1252(a)(2)(B)(ii) to avoid review of [its] delay." Opp'n & Cross-Mot. Summ. J. at 3. That argument availeth naught. *See Geda*, 126 F.4th at 847 ("Put another way, the [plaintiffs] challenge the lack of a final decision, which they argue is not itself a decision. This argument rests on faulty logic."). Once again, the catchall reaches "any other decision or action" that the relevant INA subchapter makes discretionary. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). That language embraces the process of adjudicating visas, not just the final decision, especially since the catchall's predecessor already covers "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." *See id.* § 1252(a)(2)(B)(i). For confirmation, recall the other INA provisions, which expressly confer discretion over the "manner and order" in which to "process [I-526E] petitions," *id.* § 1153(b)(5)(E)(ii)(II), and which empower the Attorney General to adjust permanent residence status "in his discretion and under such regulations as he may prescribe," *id.* § 1255(a); *see also Cheejati*, 106 F.4th at 394 ("Section 1255(a) expressly leaves not only the ultimate *decision* to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*—including the pace at which that process is undertaken—to the discretion of the Attorney General . . . ."). Rayan cannot evade the INA's jurisdiction stripping with formalistic distinctions.

* * *

"The long immigrant visa queue imposes significant hardship," and the Court understands Rayan's frustration over the delay. *See Babaria*, 87 F.4th at 980. That delay is partly due to the high demand for EB-5 visas and permanent residence, which is a testament to

our Nation's continuing appeal. But this Court would "inevitably swerve out of [its] lane" if it "put policy considerations in the driver's seat." *See Patel*, 596 U.S. at 346. In the end, "policy concerns cannot trump the best interpretation of the statutory text." *Id.*

**IV.**

When jurisdiction is absent, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).[2] This Court lacks jurisdiction over Rayan's claims of unreasonable delay in adjudicating both his I-526E petition and I-485 application. The INA demands nothing less. The Court thus will dismiss Rayan's case for lack of jurisdiction and deny his cross-motion for summary judgment. A separate Order will issue.

2026.09.21
12:15:12 -04'00'

Dated: September 21, 2026

TREVOR N. McFADDEN, U.S.D.J.

[2] The Court thus does not address the Government's alternative argument, under Rule 12(b)(6), that Rayan fails to state a plausible claim of unreasonable delay. *See* Mot. Dismiss at 7, 18–26.